

# The Attorney General of Texas

March 8, 1983

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Maurice S. Pipkin
Executive Director
State Commission on Judicial
  Conduct
211 Reagan Building
Austin, Texas   78711

Opinion No. JM-1

Re:   Whether a justice of the peace may refuse to marry an interracial couple

Dear Mr. Pipkin:

You have requested our opinion as to whether a justice of the peace may refuse to conduct a marriage ceremony for the reason that the parties are not of the same race.

A justice of the peace is an elected official and a public officer under article V, section 18 of the Texas Constitution and article 2373, V.T.C.S. He is one of the persons authorized to conduct marriage ceremonies by section 1.83 of the Family Code. State participation in even a nominally private activity can result in a characterization of that activity as "state action." See Hennessy v. National Collegiate Athletic Association, 564 F.2d 1136, 1144 (5th Cir. 1977). In our opinion, there can be no doubt that when a justice of the peace performs a marriage ceremony, he is acting in the name, and under the authority, of the state of Texas, and that he is thereby engaging in "state action."

In 1967, the United States Supreme Court invalidated, on both equal protection and due process grounds, a Virginia statute that prohibited interracial marriage. Speaking for a unanimous court in Loving v. Virginia, 388 U.S. 1 (1967), Chief Justice Warren said that marriage was among the "basic civil rights of man, fundamental to our existence and survival." 388 U.S., at 12. He declared:

> There can be no doubt that restricting the freedom to marry solely because of racial classifications violates the central meaning of the Equal Protection Clause.

388 U.S., at 12. Furthermore, to impose upon this "fundamental freedom" a racial test "is surely to deprive all the State's citizens of liberty without due process of law." 388 U.S., at 12. Thus, it is evident that, under the United States Constitution, the legislature

p. 1

could neither prohibit interracial marriage, nor prohibit the performance of such marriages by persons authorized to conduct marriage ceremonies.

The courts have made it equally clear that the constitutional guarantee of equal protection extends to all official state actions. In Columbus Board of Education v. Penick, 443 U.S. 449 (1979), the Supreme Court held:

> the Equal Protection Clause was aimed at all
> official actions, not just those of state
> legislatures.

443 U.S., at 456 (fn. 5). See also, Jackson v. Marine Exploration Company, Inc., 583 F.2d 1336, 1347 (5th Cir. 1978) (discriminatory application of a statute which is fair on its face). The Court's decision in Penick was based in part upon its earlier decision in Ex parte Virginia, 100 U.S. 339 (1879), in which a county judge in Virginia had excluded blacks from jury lists. Declaring that the reach of the fourteenth amendment is broad enough to encompass all state action, the Court there said that its prohibitions:

> have reference to actions of the political body
> denominated a State, by whatever instruments or in
> whatever modes that action may be taken. A State
> acts by its legislative, its executive, or its
> judicial authorities. It can act in no other way.
> The constitutional provision, therefore, must mean
> that no agency of the State, or of the officers or
> agents by whom its powers are exerted, shall deny
> to any person within its jurisdiction the equal
> protection of the laws. Whoever, by virtue of
> public position under a State government, deprives
> another of property, life, or liberty, without due
> process of law, or denies or takes away the equal
> protection of the laws, violates the
> constitutional inhibition; and as he acts in the
> name and for the State, and is clothed with the
> State's power, his act is that of the State. This
> must be so, or the constitutional prohibition has
> no meaning. Then the State has clothed one of its
> agents with power to annul or to evade it.

100 U.S., at 346-47.

In our opinion, it is clear that a justice of the peace, when conducting a marriage ceremony, "is clothed with the State power," and "acts in the name and for the State." As a result, the equal protection clause is applicable to his performance of that ceremony.

The United States Supreme Court has held that a state may not, consistent with that constitutional provision, restrict the freedom to marry on racial grounds. Once a justice of the peace undertakes to exercise the authority granted him by article 1.83 of the Family Code, he may not refuse to exercise it on racial grounds. We conclude that a justice of the peace is barred by the equal protection clause from imposing a racial test upon the right to marry.

## S U M M A R Y

Once a justice of the peace undertakes to exercise the authority to marry people granted him by article 1.83 of the Family Code he may not, consistent with the equal protection clause of the United States Constitution, refuse to conduct a marriage ceremony for the reason that the parties are not of the same race.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
George Gray
Jim Moellinger